UNITED STATES DISTRICT COURT

DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
|   ex rel. ANTHONY OLIVER | : | |
| | : | Civil Action No. |
| V. | : | 08 0034 (CKK) |
| | : | |
| PHILIP MORRIS USA INC. | : | JUNE 5, 2012 |

## SECOND AMENDED COMPLAINT

## INTRODUCTION

Relator Anthony J. Oliver brings this action on behalf of the United States of America,

pursuant to 31 U.S.C. § 3730(b)(1), to recover monetary damages, including actual and treble

damages and civil penalties, from defendant Philip Morris USA Inc. as a result of its violations

of the False Claims Act, 31 U.S.C. § 3729, *et seq*.

## I.    JURISDICTION

1.    The jurisdiction of this Court is invoked pursuant to 31 U.S.C. § 3732 and 28

U.S.C. § 1331.

2.    Venue is proper in this District pursuant to 31 U.S.C. § 3732 in that defendant

transacts business in this District.

II.    **PARTIES**

3.     Relator Anthony Oliver brings this action on behalf of the United States of America pursuant to the private action provisions of the False Claims Act, 31 U.S.C. § 3730(b).

4.     Defendant Philip Morris USA Inc. ("PM USA"), formerly known as Philip Morris, Inc., is a Virginia corporation, with its principal place of business in Richmond, Virginia. Defendant PM USA transacts business in the District of Columbia.  At all times mentioned herein, defendant PM USA has been in the business of manufacturing and selling cigarette products.

III.   **STATEMENT OF THE FACTS**

5.     The Navy Exchange Service Command ("NEXCOM") includes the Navy Exchange Service Centers, Navy Lodges, Ships Stores and the Navy Exchange System. NEXCOM is an integral part of the United States Department of Navy and an instrumentality of the United States Government.

6.     The Army and Air Force Exchange Service (AAFES), including its activities, offices, and individual exchanges, is an integral part of the Departments of the Army and Air Force and an instrumentality of the United States Government.

7.     NEXCOM and AAFES are components of the United States Department of Defense Supply Systems Command.  The mission of both NEXCOM and AAFES is to provide goods and services to authorized customers in the military exchanges which they serve – the United States Navy and Marine Exchanges, the United States Army Exchanges, and the United States Air Force Exchanges.

2

8.     Although NEXCOM and AAFES contracts do not obligate appropriated funds of the United States, vendor contracts with NEXCOM and AAFES are contracts of the United States Government.

9.     A critical component of both the NEXCOM and AAFES military exchange purchasing programs is the requirement that government vendors provide NEXCOM and AAFES with "most favored customer" status, insuring that the prices paid by NEXCOM and AAFES for the products they purchase are equal to or more favorable than the prices, including any customer discounts, at which the vendors sell like products to other non-government and government purchasers.

### A.     The Applicable NEXCOM General Provisions

10.     Effective April 1, 1999, NEXCOM issued General Provisions Publication Number 61, a publication co bntaining the General Provisions applicable to the nonappropriated fund contracts and purchase orders for supplies and services issued by the Navy Exchange Service Command, Navy Exchange Service Centers, and Navy Exchanges.

11.     NEXCOM's General Provisions provide that they are issued, upon request, to vendors doing business with the said Navy activities to eliminate the need for including them with each solicitation, contract or purchase order and are incorporated by reference in each appropriate contractual document.

12.     Pursuant to Section A(1)(c) of NEXCOM's General Provisions, the term "contract" means "any type of agreement and order for the procurement of supplies" including "all types and forms of contract, including letter orders and purchase orders."

3

13.     Pursuant to Section A(1)(d) of NEXCOM's General Provisions, the term "contractor" includes the terms "vendor, "seller," "concessionaire" and "licensee"

14.     At all times relevant hereto, Section C of NEXCOM General Provisions required a vendor to provide the following Contractor Price Warranty:

    a.   <u>Most Favored Customer</u>   The Contractor certifies that prices, terms and conditions offered under this contract, including consideration of any discount rebate arrangements, do not exceed prices then being charged the Contractor's most favored customer or another military exchange for like items.

    b.   <u>Subsequent Reductions</u> If the Contractor subsequently extends voluntary price reductions, promotional offers or other special items to other customers, the Contractor is obligated to promptly extend them, in writing, to [NEXCOM].

## B.     The Applicable AAFES General Provisions

15.     At all times relevant hereto, AAFES has issued Supplier Requirements setting forth General Provisions applicable to goods purchased from vendors.

16.     As of November 1995 and at all times subsequent thereto relevant to this action, section 1, ¶ 3 of such General Provisions, entitled "Prices," required a vendor to provide the following price warranties:

    a.   The Contractor warrants that during this contract, the net price to AAFES (considering each unit price, discounts, allowances, co-op advertising, rebates, and other terms and conditions) for each item purchased will be as favorable as, or better than, the price the item is being sold by the Contractor to other customers under the same or similar conditions and in the same general geographical area pursuant to agreements made during the same period.  In the event the Contractor subsequently agrees to sell the item to another customer at a lower price, the Contractor is obligated to promptly offer the lower price, in writing, to the Contracting Officer. ....

      b.      In the event the Contractor subsequently extends special offers (e.g., vendor price reductions [VPRs] rebates, coupons) or other special terms to other customers, the Contractor is obligated to promptly extend them, under the same conditions and in writing, to the Contracting Officer. ....

      c.      The above warranty and obligations may be modified only by written agreement between Contractor and the Contracting Officer, based upon written justification acceptable to the Contracting Officer.

17.     As of January 2001, and at all times subsequent thereto relevant to this action, AAFES has issued "Terms and Conditions (for Expense, Supplies and Equipment Purchased by AAFES)" which are incorporated by reference in each vendor solicitation or contract.

18.     At all times relevant hereto prior to December 2007, the Terms and Conditions issued by AAFES for its vendors have included as ¶ 23 the November 1995 Prices warranty set forth in the Supplier Requirements quoted above.

19.     In December 2007, and continuing to date, the Terms and Conditions issued by AAFES for its vendors have included the following ¶ 23 as to Prices:

The prices for products provided by the Contractor in this contract are hereby warranted by the Contractor to be comparable to, or more favorable to AAFES than, the comparable prices, terms, and conditions that have been offered by the Contractor to any of its customers.  If the Contractor offers to industry or government at large price decreases on the products and services included in this contract, which become effective during the term of the contract, the price decreases will be passed on to AAFES to any portion of contract performance not completed at time of implementation of the price decreases by the Contractor, to the extent the decreased prices would be lower than the prices in this contract. The Contractor will offer price decreases and technology upgrades by letter addressed to the Contracting Officer. If an offer is acceptable to AAFES and does not require further negotiation, the Contractor agrees the offer may be accepted by issuance of a unilateral contract amendment by the Contracting Officer, referencing the Contractor's letter.

### C.   Defendant PM USA's Knowing Violations
### of NEXCOM's and AAFES's
### <u>Most Favorable Customer Provisions</u>

20.     Defendant PM USA has, for a number of years and at least from 2002 to date,

sold its cigarette products to NEXCOM and AAFES and has been required to comply with the

"most favorable customer" warranties of NEXCOM's and AAFES's contracting requirements

described above.

21.     At all times mentioned herein, defendant PM USA has been aware that its sales of

cigarette products to NEXCCOM and AAFES have  been subject to the "most favorable

customer" warranties of NEXCOM's and AAFES's contracting requirements described above.

22.     At all times mentioned herein, defendant PM USA has been aware that its

purchase orders and other contract documents for the sale of its cigarette products to NEXCOM

and AAFES have incorporated and been deemed to include the "most favorable customer"

warranties of NEXCOM's and AAFES's contracting requirements described above.

23.     At all times mentioned herein, defendant PM USA has, through the submission of

its purchase orders and other contract documents, knowingly represented to NEXCOM and

AAFES that the prices it was charging for its cigarette products complied with the "most

favorable customer" warranties of NEXCOM's and AAFES's contracting requirements described

above.

24.     In fact, throughout the period covered by this Second Amended Complaint,

defendant PM USA has intentionally and knowingly charged both NEXCOM and AAFES prices

for its cigarette products that violated  the "most favorable customer" warranties of NEXCOM's

and AAFES's contracting requirements described above, in the following respects:

25.     Throughout the period of time covered by this Second Amended Complaint, defendant has knowingly sold cigarette products identical to the cigarettes sold to AAFES and NEXCOM to affiliates of defendant – including, but not limited to, Philip Morris Duty Free, Inc. and Philip Morris International, Inc. –  at prices lower than the prices such cigarettes were sold to NEXCOM and AAFES, knowing that such affiliates were, in turn, re-selling such cigarettes to foreign purchasers in markets similarly situated to NEXCOM and AAFES at prices lower than the prices charged to NEXCOM and AAFES.

26.     In particular, for example, over the period covered by this Second Amended Complaint, one or more of defendant's affiliates purchased defendant's cigarette products from defendant (at a price well below the price charged to NEXCOM) and re-sold such cigarettes to the civilian duty-free market on American Samoa at a cost for defendant's Marlboro cigarettes of approximately $13.83 per carton NET FOB Port of Los Angeles.  Over this same period, the cost per carton for Marlboro cigarettes purchased by NEXCOM for the Navy on Guam was approximately $27.77 less a $4.00 rebate, or $9.94 more per carton than the civilian duty-free market was paying for the same cigarettes.  This price differential was even greater in light of defendant's volume discount of $4.00 per carton to civilian buyers on Guam such as DFS (Duty Free Stores), resulting in an overall price differential of $13.94 per carton.

27.     Similar price differentials have existed throughout the period covered by this Second Amended Complaint for sales by defendant's affiliates of defendant's cigarettes to the duty-free and foreign markets comparably situated to AAFES overseas military exchanges.

28.     Defendant asserts that these price differentials do not violate the "most favorable customer" warranties of NEXCOM's and AAFES's contracting requirements described above because its affiliates are legally independent corporations that are transacting business with defendant (in contracting to buy defendant's cigarette products at prices below the prices charged NEXCOM and AAFES) at arm's length and with foreign purchasers (setting the price for the re-sale of such cigarettes at prices below the prices charged NEXCOM and AAFES) at arm's length.

29.     However, defendant's affiliate transactions are in knowing violation of the "most favorable customer" warranties of NEXCOM's and AAFES's contracting requirements described above in that (1) to the extent that defendant truly asserts that its affiliates' purchases of its cigarettes are arm's length transactions to independent customers, defendant is obligated to offer its cigarette products to NEXCOM and AAFES at the favorable prices sold to such "customers;" and (2) to the extent that defendant's transactions with its affiliates are not at arm's length, they impermissibly circumvent NEXCOM's and AAFES's most favorable customer provisions.  In either event, throughout the period covered by this Second Amended Complaint, defendant has charged NEXCOM and AAFES millions of dollars more, annually, for its cigarette products than has been paid by either defendant's affiliates purchasing such products or foreign purchasers buying such products from defendant's affiliates.

### 3.     Defendant's False Claims and Statements

30.     Defendant PM USA has, for a number of years, and at least from 2002 to date, sold its cigarette products to NEXCOM pursuant to purchase orders that have incorporated, expressly or impliedly, the price warranties included in NEXCOM's General Provisions

Publication No. 61.  Because relator has not yet been afforded discovery in this action, he is not at present in possession of such purchase orders and is unable to provide greater specification of the details of each of these purchase orders at this time.

31.     Defendant PM USA's aforesaid purchase orders for sales of its cigarette products to NEXCOM have, from at least 2002 to date, falsely warranted that defendant is in compliance with the price warranties included in NEXCOM's General Provisions Publication No. 61, even though defendant has, at all relevant times, known that its sales to NEXCOM do not comply with such price warranties.

32.     Defendant PM USA knowingly submitted such false purchase orders to NEXCOM in order to obtain payments for its cigarette products to which it was not entitled, knowing and intending that NEXCOM would rely on the warranties in such purchase orders in determining to make such payments to defendant.

33.     Defendant PM USA's false statements were material to defendant's false claims for payment and influenced the decision by NEXCOM to pay such claims.

34.     Defendant PM USA has, for a number of years, and at least from 2002 to date, sold its cigarette products to AAFES pursuant to purchase orders or other forms of contract that have incorporated, expressly or impliedly, the price warranties included in AAFES's Supplier Requirements and Terms and Conditions.  Because relator has not yet been afforded discovery in this action, he is not at present in possession of such purchase orders and other forms of contract and is unable to provide greater specification of the details of each of these purchase orders at this time.

35.     Defendant PM USA's aforesaid purchase orders and other forms of contract for sales of its cigarette products to AAFES have, from at least 2002 to date, falsely warranted that defendant is in compliance with the price warranties included in AAFES's Supplier Requirements and Terms and Conditions, even though defendant has, at all relevant times, known that its sales to AAFES do not comply with such price warranties.

36.     Defendant PM USA knowingly submitted such false purchase orders and other forms of contract to AAFES in order to obtain payments for its cigarette products to which it was not entitled, knowing and intending that AAFES would rely on the warranties in such purchase orders and other forms of contract in determining to make such payments to defendant.

37.     Defendant PM USA's false statements were material to defendant's false claims for payment and influenced the decision by AAFES to pay such claims.

38.     Although relator lacks information at present as to the precise amount of defendant's false pricing claims for its cigarette products, it is relator's understanding that for the 52-week period ending September 2007, PM USA sold over 1.6 million cartons of Marlboro cigarettes to AAFES for overseas military exchanges.  Regarding defendant's false pricing sales to NEXCOM, it is relator's understanding that NEXCOM purchases approximately 10% as many Marlboro cigarettes as are purchased by AAFES, the larger military purchasing exchange.  Thus, for defendant's Marlboro cigarettes alone, AAFES and NEXCOM purchased approximately 1.8 million cartons annually, at improperly inflated prices pursuant to defendant's false claims and false statements.

IV.     **CLAIMS FOR RELIEF**

A.       **FIRST CLAIM FOR RELIEF**

1. - 38.    Paragraphs 1 through 38 of this Second Amended Complaint are incorporated herein as paragraphs 1 through 38 of this First Claim for Relief.

39.     Defendant PM USA has knowingly presented or caused false records or statements to be presented to NEXCOM for the purpose of getting a false or fraudulent claim paid or approved by the Government, in violation of 31 U.S.C. § 3729(a)(1).

40.     Defendant PM USA has knowingly presented or caused false records or statements to be presented to AAFES for the purpose of getting a false or fraudulent claim paid or approved by the Government, in violation of 31 U.S.C. § 3729(a)(1).

41.     As a result of the conduct of defendant PM USA, as aforesaid, the United States Government has sustained monetary damages through the payment of false or fraudulent claims for defendant's cigarette products.

42.     The conduct of defendant PM USA as aforesaid was undertaken with actual knowledge of the falsity of defendant's statements and in wanton, willful and reckless disregard of defendant's contracting obligations.

B.       **SECOND CLAIM FOR RELIEF**

1. - 38.    Paragraphs 1 through 38 of this Second Amended Complaint are incorporated herein as paragraphs 1 through 38 of this Second Claim for Relief.

39.     Defendant PM USA has knowingly made, used or caused to be made or used a false record or statement material to a false or fraudulent claim to NEXCOM and for the purpose of getting a false or fraudulent claim paid by NEXCOM, in violation of 31 U.S.C. § 3729(a)(2).

11

40.     Defendant PM USA has knowingly made, used or caused to be made or used a false record or statement materials to a false or fraudulent claim to AAFES and for the purpose of getting a false or fraudulent claim paid by AAFES, in violation of 31 U.S.C. § 3729(a)(2).

41.     As a result of the conduct of defendant PM USA, as aforesaid, the United States Government has sustained monetary damages through the payment of false or fraudulent claims for defendant's cigarette products.

42.     The conduct of defendant PM USA as aforesaid was undertaken with actual knowledge of the falsity of defendant's statements and in wanton, willful and reckless disregard of defendant's contracting obligations.

## V.      PRAYER FOR RELIEF

Wherefore relator prays the following relief:

1.      Judgment awarding damages to the plaintiff United States of America, including actual and treble damages and the statutory civil penalty for each false claim or statement to the Government submitted or caused by defendant, as provided by 31 U.S.C. § 3729(a);

2.      An award of the statutory relator's share to relator, as provided by 31 U.S.C. § 3730(d);

3.      Reimbursement of relator's attorneys' fees and expenses, pursuant to 31 U.S.C. § 3730(d).

4.      Such other relief as the Court deems just and appropriate.

12

Dated: January 5, 2012                    Respectfully submitted,

                                          /s/ David S. Golub
                                          David S. Golub (*pro hac vice*)
                                          Jonathan M. Levine (*pro hac vice*)
                                          SILVER GOLUB & TEITELL LLP
                                          184 Atlantic Street
                                          P.O. Box 389
                                          Stamford, Connecticut 06904
                                          (203) 325-4491
                                          dgolub@sgtlaw.com
                                          jlevine@sgtlaw.com

                                          Carl S. Kravitz (DC Bar No. 357376)
                                          Jason M. Knott (DC Bar No. 487636)
                                          ZUCKERMAN SPAEDER LLP
                                          1800 M Street, N.W.
                                          Washington, DC 20036
                                          (202) 778-1800
                                          ckravitz@zuckerman.com
                                          jknott@zuckerman.com

                                          JOHN F. MURPHY (*pro hac vice*)
                                          1324 Asylum Avenue
                                          Hartford, Connecticut 06105-6011
                                          (860) 233-9946
                                          (860) 523-5065
                                          john.murphy18@comcast.net

                                          *Attorneys for Relator Anthony Oliver*

## CERTIFICATION

I hereby certify that I caused a true and correct copy of the foregoing to be served upon all registered CM/ECF users on January 5, 2012.

/s/   David S. Golub
David S. Golub
Counsel for Relator Anthony Oliver